# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSIE Y. MORGAN (#356453)**

**VERSUS**

**FREDERICK BOUTTE, ET AL.**

**CIVIL ACTION**

**NO. 18-679-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on November 4, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JOSIE Y. MORGAN (#356453)**

**VERSUS**

**FREDERICK BOUTTE, ET AL.**

**CIVIL ACTION**

**NO. 18-679-BAJ-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Petitioner's application should be denied. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Josie Morgan, challenges her conviction of second degree murder, entered in 2012 in the Twentieth Judicial District Court for the Parish of East Feliciana, State of Louisiana. On July 6, 2018, the petitioner filed a petition for a writ of habeas corpus contending: (1) she was denied the right to testify, (2) she was denied the right to confront witnesses, (3) her conviction was based on insufficient evidence, (4) prosecutorial misconduct, (5) the trial court erred in excluding witnesses' prior inconsistent statements (6) the trial court erred in allowing improper lay witness testimony, and (7) law enforcement coerced third party witness testimony.

### Procedural History

After a trial by jury conducted in July and August of 2012, the petitioner was found guilty of second degree murder, and on September 18, 2012 the petitioner was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The petitioner thereafter appealed her conviction to the Louisiana First Circuit Court of Appeal ("First Circuit"), asserting as error: the verdict was contrary to the law and evidence, the

2

evidence was insufficient to support the verdict, the trial court erred in denying the post-verdict motion for acquittal, the trial court erred in allowing Detective Dilworth to give expert testimony on technical aspects of cell phone records, the trial court erred in excluding from evidence the taped statements of two witnesses, and the prosecution knowingly presented perjured testimony. On June 7, 2013, the First Circuit affirmed petitioner's conviction and sentence. *State v. Morgan*, 2012-2060 (La. App. 1 Cir. 6/7/13), 119 So.3d 817. The petitioner appealed the First Circuit's ruling affirming her conviction to the Louisiana Supreme Court, which denied review on December 7, 2015.

On or about May 13, 2015, the petitioner filed an application for post-conviction relief in the Twentieth Judicial District Court asserting: she was denied effective assistance of counsel, she was denied the right to confront the witnesses against her because the trial court refused to allow the defense to play the recorded prior statements of two witnesses, the evidence was insufficient to support the verdict, the prosecution knowingly used false and perjured testimony, and the trial court erred in allowing a law witness to give expert testimony regarding cell phone records. Pursuant to an Order dated August 18, 2015, the petitioner's application was denied in the trial court. The Louisiana Supreme Court ultimately denied review on August 4, 2017.[1]

On or about July 6, 2018 the petitioner filed the instant application for habeas corpus relief in this Court.

---

[1] The First Circuit's writ denial is not contained in the record. Because the Louisiana Supreme Court ruled on the merits, the Court will presume that the petitioner timely filed a writ application with the First Circuit, which was subsequently denied.

**Factual Background**

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal are as follows: On Saturday, December 1, 2007, Jonova Walker, Charles Plain, Lionel Allen, and Andre Turner (the victim) had dinner at the petitioner's residence in Sweetbriar Trailer Park in Zachary. According to trial testimony, sometime after dinner, the petitioner, Walker, Allen, and the victim left the petitioner's house while Plain (the petitioner's boyfriend at the time) stayed at the petitioner's trailer for the night. Walker and the petitioner were riding in a Honda Accord, and the victim and Allen were riding in a black Geo Storm. After the group made a brief stop at a motel, Walker followed the others as they travelled in the Geo Storm on Scenic Highway. When they turned off Scenic Highway onto Carney Road, the Geo Storm swerved and came to an abrupt stop. Allen and the victim exited the vehicle and began fighting.

According to Walker's testimony, she and the petitioner stepped out of their vehicles, and the petitioner grabbed a pipe wrench out of Walker's vehicle and repeatedly hit the victim in the back of the head. Allen and the petitioner continued to beat the victim as he attempted to get off the ground and begged for his life. The victim managed to get up and run from the petitioner and Allen, who then got back into the Geo and pursued the victim, with the petitioner driving. Walker got back in the Honda Accord and followed them a short distance as they approached the next corner. Walker testified that when she turned the corner behind the Geo, she saw the Geo stopped with its front tire resting on top of the victim's back. The petitioner then backed the vehicle off of the victim's body, and she and Allen placed his body in the front passenger seat.

Walker followed in the other vehicle as they drove to a nearby wooded area. The petitioner and Allen dragged the victim's body into the woods and set it on fire. On December 3,

2007, the East Feliciana Parish Sheriff's Office received a call regarding the discovery of the victim's body in a wooded area. According to the autopsy performed on December 5, 2007, the victim suffered multiple lethal blunt-force injuries to the head, fractured ribs, a broken sternum, lacerations on the back of his lungs and liver, internal bleeding, a fractured pelvis, and his entire body was badly burned, including charring from fourth-degree burns. *State v. Morgan,* 2012-2060 (La. App. 1 Cir. 6/7/13), 119 So. 3d 817, 820–21.

### Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See*

5

*also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Substantive Review

### *Claim (1): Denial of the Right to Testify*

In Claim 1, the petitioner contends that she received ineffective assistance of counsel because her trial counsel advised her not to testify in her own defense. The petitioner does not explicitly state what her testimony would have been. However, the statement of facts in the petitioner's habeas corpus asserts that Jonova Walker acted alone when Walker beat the victim, drove him to a secluded location, and set him on fire. The petitioner raised this claim in her application for post-conviction relief. The trial court denied the claim, finding that trial counsel's decision to rely on cross-examination of the trial witnesses on their prior inconsistent statements in lieu of calling the petitioner to testify was a tactical decision, well within the range of reasonable professional assistance.

A defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense. *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987). It is one of the rights that "are essential to due process of law in a fair adversary process." *See Rock*, 483 U.S. at 51. The right to testify in one's own defense is protected by the Fifth Amendment's privilege against self-incrimination, the Sixth Amendment's compulsory process clause, and the Fourteenth Amendment's due process clause. *See Rock*, 483 U.S. at 51-53. When a defendant contends that

6

trial counsel interfered with his right to testify, "the appropriate vehicle for such claims is a claim of ineffective assistance of counsel." *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002) (citing *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001)).

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that his counsel's performance was both deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense"). *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994) (citing *Strickland*, 466 U.S. at 686-89, 693). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *See Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 689). As to the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Anderson*, 18 F.3d at 1215 (citing *Strickland*, 466 U.S. at 693).

A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. *See Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689). The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *See Richter*, 562 U.S. at 104

7

(citing *Strickland*, 466 U.S. at 687). The decision whether to put a defendant on the stand is a judgment call which should not easily be condemned with the benefit of hindsight. *See Mullins*, 315 F.3d at 453.

At the close of the prosecution's case, the petitioner advised the court that based on her counsel's advice she did not want to testify.[2] While not immediately apparent from the record, it appears that the petitioner's trial counsel was likely concerned that petitioner's testimony would open the door for evidence regarding the petitioner's involvement with the victim and Jonova Walker in drug use and an armed robbery the same night as the murder.[3] The petitioner's trial concluded without her offering any testimony. When the petitioner's attorney rested his case, the petitioner did not object or state that she wished to testify.

The state court found that the decision not to testify was a trial strategy within the bounds of reasonable professional assistance. This Court finds that the state court's conclusion was neither contrary to nor an unreasonable application of federal law. The petitioner has not shown that her attorney did not provide reasonably effective assistance under prevailing professional norms when he advised her to waive her right to testify.

Because counsel's performance was not deficient, it is not necessary to consider whether the challenged decision undermines confidence in the outcome of the petitioner's trial. However,

---

[2] Trial Record, p.1017.

[3] Walker testified that she, the victim and the petitioner went to Scenic Highway Motel to count money. The facts surrounding the money that was acquired and being counted at the motel that night were not fully introduced. However, Spence Dilworth, formerly the chief of detectives at the West Feliciana Parish Sheriff's Office, testified that his involvement in this case began with an initial call concerning $6,000.00 taken from the victim of an armed robbery at approximately 2:30 a.m. on Sunday, December 2. He ultimately concluded that the petitioner, Walker, and the victim were involved in the robbery. According to Dilworth, police statements further indicated that the group also went to the motel to use drugs. *State v. Morgan*, 2012-2060 (La. App. 1 Cir. 6/7/13), 119 So. 3d 817, 821.

the Court observes that the petitioner's claim that her testimony would have resulted in an acquittal falls short of satisfying *Strickland's* prejudice element. Considering the overwhelming evidence of the petitioner's guilt, particularly the petitioner's mother's testimony that the petitioner admitted the crime,[4] there is no basis for concluding that the petitioner's self-serving testimony would have resulted in a different outcome. Claim 1 is without merit.

### Claim (2): Denial of Right to Confront Witnesses
### &
### Claim (5) Exclusion of Witnesses' Prior Recorded Statements

In Claim 2, the petitioner contends that she was denied the right to confront witnesses against her because the state's case relied on inconsistent testimony from Jonova Walker and Charles Plain. In Claim 4, the petitioner contends that her Fifth Amendment due process right was violated when the trial court prohibited the defense from introducing as evidence Walker and Plain's recorded interviews with the police. These two claims involve overlapping argument and analysis and will be addressed simultaneously.

The petitioner's appeal to the First Circuit included an assignment of error that the trial court erroneously denied the petitioner's motion to introduce the tapes. The petitioner's application for post-conviction relief raised this claim in the context of the Confrontation Clause. The trial court denied the claims in the petitioner's post-conviction application, relying upon the First Circuit opinion. The First Circuit denied the claim regarding the police interview tapes,

---

[4] The defendant's mother, Mary Lee Jack, testified as a State witness. According to her testimony, the day before she saw the news story about the victim's death, the petitioner told her that she was in trouble and that she hit someone in the head with a bat and that the person "fall out." The petitioner also mentioned a fire at Thompson Creek and that something happened to the victim. After Jack saw the news story about the victim's death, she concluded that her conversation with her daughter was relevant and gave a statement to the police. *State v. Morgan*, 2012-2060 (La. App. 1 Cir. 6/7/13), 119 So. 3d 817, 824.

finding that the witnesses admitted at trial that they lied to the police, which rendered the taped police interviews inadmissible evidence under the Louisiana Code of Evidence. The First Circuit also discussed the Confrontation Clause, noting that it affords a criminal defendant the right to cross-examine witnesses against him. The First Circuit concluded, "the trial testimony regarding prior inconsistent statements by Plain and Walker was very extensive, and the witnesses were subjected to intense cross-examination…playing the interviews in their entirety involved the risk of undue consumption of time." *State v. Morgan*, 2012-2060 (La. App. 1 Cir. 6/7/13), 119 So.3d 817, 829.

The Confrontation Clause states, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *U.S. Const. amend. VI*. That right includes an opportunity to test the reliability and credibility of the State's witnesses through cross-examination into "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska,* 415 U.S. 308, 316 (1974). The Supreme Court has stated that "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer,* 482 U.S. 730, 739, (1987) (quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, (1985)) (emphasis in original). A trial court "retains wide latitude" to place reasonable limits on a criminal defendant's right to cross-examine a witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

The petitioner was afforded the opportunity for effective cross-examination. Indeed, the record reflects that the petitioner's trial counsel rigorously cross-examined both Plain and Walker about their prior inconsistent statements to the police. On cross-examination, Plain admitted he gave two or three statements to the police[5] and that he originally provided an alibi for the petitioner.[6] Plain admitted that he lied when he told the police he did not see the victim the night of the murder[7] and that he previously lied in court when he testified that Lionel Allen was not at the petitioner's house the night of the murder.[8]

Jonova Walker admitted on cross-examination that she lied to the police several times[9] and she admitted her taped statements to the police were lies.[10] Walker testified that she lied when she told the police she picked the victim up on the night of the murder,[11] she lied to police when told them her vehicle was in Centreville, Mississippi,[12] she lied to police when she told them her vehicle was stolen on Scenic highway,[13] she lied to police when she told them she had been rear-ended with the victim on Scenic Highway and the person that rear-ended them beat the victim to death,[14] she lied to the state trooper who conducted a traffic stop when she told him the blood in her car was due to a fight with her boyfriend,[15] she lied about telling Kenneth Sterling to burn her car,[16] and she lied when told the police she found a human finger in her car and flushed

---

[5] Trial Record, p. 835.
[6] Trial Record, p. 836.
[7] Trial Record, p. 837.
[8] Trial Record, pp. 839-841.
[9] Trial Record, p. 917.
[10] Trial Record, pp. 917-918.
[11] Trial Record, p. 917.
[12] Trial Record, p. 919.
[13] Trial Record, p. 919.
[14] Trial Record, pp. 919-920.
[15] Trial Record, p. 920.
[16] Trial Record, p. 920.

it down the toilet.[17] Walker admitted at trial that her second degree murder charge was reduced to obstruction of justice in exchange for her trial testimony.[18] At the close of the testimony, the trial court denied the defense's motion to play the prior inconsistent police interviews for the jury, finding that the witnesses admitted they lied to the police and there would be nothing gained by playing the tapes.[19]

The Confrontation Clause requires that a defendant be given adequate opportunity to cross-examine adverse witnesses. *U.S. v. Owens*, 484 U.S. 554 (1988). Plain and Walker were present at trial and subject to full cross-examination. No constitutional concerns are raised when a trial court excludes a testifying witness's prior statements when the defense had an opportunity to fully cross-examine the witness about any statements he may have made. *U.S. v. Hale*, 685 F.3d 522 (2012).

Exclusion of the prior taped statements also did not run afoul of the Due Process clause. In habeas actions, federal courts do not sit to review the mere admissibility of evidence under state law. *Little v. Johnson,* 162 F.3d 855, 862 (5th Cir.1998), *cert. denied,* 526 U.S. 1118 (1999). However, state courts' evidentiary rulings warrant habeas relief when errors are so extreme that they constitute a denial of fundamental fairness under the Due Process Clause. *Id.* In other words, habeas relief is warranted only when erroneous exclusion played a crucial, critical, and highly significant role in the trial. *Pemberton v. Collins,* 991 F.2d 1218, 1227 (5th Cir. 1993); *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir.1983). The exclusion of the tapes cannot be seen to play a crucial, critical, and highly significant role at trial when the defense was

---

[17] Trial Record, p. 920-921.
[18] Trial Record, p. 921.
[19] Trial Record, p. 1017-1018.

allowed the opportunity to fully cross-examine the witnesses on their prior inconsistent statements and the playing of the tapes would have been duplicative of the witnesses' testimony admitting they lied to the police in their prior interviews. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application, of federal law. The petitioner is not entitled to federal habeas corpus relief on this claim.

### Claim (3): Sufficiency of the Evidence

In Claim 3, the petitioner asserts that her conviction was based on insufficient evidence. In her argument on this claim, the petitioner contends that Jonova Walker's testimony was unbelievable and untruthful based on her inconsistent statements to the police. The petitioner raised this claim on direct appeal. The First Circuit reviewed the standard for sufficiency of evidence set forth in *Jackson v. Virginia*, 433 U.S. 307 (1979) and found that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The First Circuit reviewed the sufficiency of the evidence against the petitioner in detail:

> Dr. Karen Ross, a forensic pathologist with the Jefferson Parish Coroner's Office at the time of the offense, performed an autopsy on the victim two days after his body was found. She testified that the victim's cause of death was multiple blunt-force injuries alone or in association with smoke inhalation and thermal injury because the body had been burned after blunt-force injuries were sustained. She noted that although the injuries were lethal, the victim could have still been alive at the time he was set on fire because there was a small amount of soot located in his airway indicating that he took in a few breaths, and there was aspiration of some of the gastric materials. She stated that the victim's entire body was on fire and was largely charred by fourth-degree burns. The victim sustained multiple blunt-force injuries to the head, with at least fifteen different areas of lacerations. Some of the head injuries were sharp or triangulated while others were longer. Blood located beneath the victim's scalp indicated he was alive when he sustained the head trauma.
>
> Dr. Ross stated that the lacerations and hemorrhage in the victim's scalp and head area were consistent with being struck with an object like a bat or pipe. The victim also had fractured ribs, a broken sternum, lacerations on the back of both lungs and the liver, internal bleeding and a fractured pelvis. Dr. Ross stated that it would have

taken a lot of force in fracturing the large bones and that the bodily injuries were consistent with the victim being hit or run over by a car. The victim was alive when he sustained the bodily injuries. The victim had defensive wounds on two fingers on his right hand consisting of lacerations (one of which went into the nail bed) and the palm of his right hand was relatively spared from some of the thermal injury. Based on his stomach contents, it was estimated that approximately two hours lapsed between the victim's last meal and the estimated time of his death.

State witness Joshua Jones (the victim's cousin) saw the victim on the night in question when he was still alive. Jones testified that sometime between 11:00 p.m. and midnight he saw the victim, the [petitioner], and Walker leave a junkyard on East Flanacher Road in Port Hudson in a black car being driven by Walker.

At approximately 4:30 p.m. on December 3, Detective Don McKey of the East Feliciana Parish Sheriff's Office, who was the lead detective in the instant case, responded to the wooded area where the victim's body was located. Detective McKey testified that a piece of paper containing Walker's name and telephone number was found near the body. His investigation, including statements from Walker, Allen, Jones, Samuel Territo, and Mary Jack (the [petitioner]'s mother) ultimately led him to believe that the victim was with the [petitioner] and Walker during the overnight hours between December 1 and December 2. On December 6, Detective McKey interviewed Walker, the [petitioner], and Plain. The [petitioner] did not make a statement, and though Walker admitted to being with the [petitioner] and the victim on the night in question, she initially did not provide details surrounding the victim's murder and denied that the victim or Allen were at the [petitioner]'s trailer that night. Plain indicated that the [petitioner] stayed home with him on the night in question.

The East Feliciana Parish Sheriff's Office requested and received a certified copy of an insurance policy issued April 20, 2006 with the victim as the insured and the [petitioner] as the primary beneficiary. After being arrested for obstruction of justice, Plain provided statements consistent with his trial testimony. Similarly, on November 19, 2008, Walker finally provided statements and information consistent with her trial testimony.

During his trial testimony, Plain admitted that he lied when he first spoke to the police in March 2008 in an effort to protect the defendant. He testified that Allen, the victim, Walker, the [petitioner], and he were present at the [petitioner]'s trailer that night, and the [petitioner] cooked dinner. Plain stayed at the trailer when the other four individuals left at about 8:00 p.m. He testified that the [petitioner] and Walker returned at about 2:00 a.m. Plain further testified that the [petitioner] and Walker were acting "strange" and "jumping" when they returned.

14

Walker indicated that she and the [petitioner] were close friends and like sisters at the time of the offense. According to her trial testimony, she watched as the [petitioner] and Allen severely beat the victim as he tried to get up off the ground. After the [petitioner] hit the victim with the car and drove him to the wooded area, Walker witnessed the [petitioner] and Allen drag the victim's body into the woods. She also saw Allen remove a container of gas out of her car but could not actually see the fire being set from where she was standing.

According to Walker, Allen was still with them when they went back to the [petitioner] 's trailer after the murder. Walker further noted that the [petitioner] had blood splattered all over her face. They entered through the back door and the [petitioner] immediately removed her clothing and took a shower. After unsuccessful attempts to remove the blood from the car interior, the [petitioner] and Walker took the vehicle to Sam Territo's property where they stripped and discarded some of the interior, including door panels and seating. Days later they retrieved the partially stripped car and abandoned it in a Wal–Mart parking lot in Port Allen. After her arrest, Walker asked a sexual partner, Kenneth Sterling, to go to the Wal–Mart and "handle" the car.

Walker admitted that she lied to the police during interviews that took place soon after the victim's body was discovered and her arrest, and again in March 2008. She indicated that she did not want to give the police any information because she did not want the [petitioner] to go to jail, adding that she was also personally concerned about avoiding going to jail. When she finally came forward to provide details about the murder in November 2008, she also informed the police of the location where the victim was initially beaten and the nearby location where he was hit with the car. She also escorted them to the property where the discarded portions of the vehicle's interior were located.

Walker admitted that the State reduced the second degree murder charge against her to obstruction of justice in exchange for her testimony, as shown in the written plea agreement subsequently introduced by the defense. She nonetheless specifically stated that she came forward because she "just couldn't hold it in anymore" and repeatedly asserted that her trial testimony was truthful. During cross-examination she again admitted to repeatedly providing statements in the past that were inconsistent with her trial testimony and sending the police on a "wild [goose] chase" as to the location of evidence, but denied beating the victim or hitting him with the car. She denied having any scratches or injuries from the night in question.

Consistent with Walker's testimony, Sterling testified that when Walker called him after her arrest and asked him to burn her car, he did so. He stated that he poured gas on and under the vehicle and lit it with a match while it was in a Wal–Mart

parking lot. Sterling noted that he initially lied to the police about setting the car on fire.

Sam Territo testified that he had known the [petitioner] well since she was a little girl and talked to her relatively frequently. He further stated that he would more than likely recognize her voice over the telephone. The [petitioner]'s brother worked for Territo and lived on his property in Pointe Coupee at the time of the murder. According to Territo, the [petitioner] contacted him by phone once or twice and once in person in December 2007 regarding leaving a car on his property. The [petitioner] told him that the car needed repairs and that someone would come and repair it. Territo agreed and the car was stored on his property for a period of time. Territo gave the police permission to search his property when Walker led them to that location in late November 2008.

The [petitioner]'s mother, Mary Lee Jack, also testified as a State witness. According to her testimony, the day before she saw the news story about the victim's death, the [petitioner] told her that she was in trouble and that she hit someone in the head with a bat and that the person "fall out." The [petitioner] also mentioned a fire at Thompson Creek and that something happened to the victim. After Jack saw the news story about the victim's death, she concluded that her conversation with her daughter was relevant and gave a statement to the police.

The victim's first cousin, Nicole Turner, testified that when she saw the [petitioner] while shopping in June 2007, the [petitioner] showed her a life insurance policy in the victim's name and stated that the victim was worth more to her dead than alive. The [petitioner] further informed Turner that she made certain to keep up the payments on the policy.

Among the cell phone records introduced by the State, it was shown that the [petitioner]'s cell phone was used on December 1 at 10:33 p.m. in Zachary. The [petitioner]'s cell phone was used to call Walker's cell phone between Port Hudson and Baton Rouge starting at about 6:25 a.m. on December 2. It was used to call Walker again later that morning in Gonzales at 7:57 and 7:58 a.m., and to call Territo between 10:36 and 10:39 a.m.

The defense called Officer Harold Edenfield and Louisiana State Police Trooper Troy Magallenes as witnesses in an attempt to illicit testimony regarding possible visible scars or scratches on Walker's face, neck, or shoulders following the victim's murder. Officer Edenfield, who was employed by the West Feliciana Parish Detention Center, was present on December 6, 2007, when Walker was arrested and booked. Trooper Magallenes stopped Walker's vehicle at 7:40 a.m. on December 2 and issued her an illegal window tint ticket. Both witnesses testified that they did not recall any scars or scratches on Walker's face and, further, that they would have noted such an observance. Trooper Magallenes observed blood in

the front and back of the vehicle being driven by Walker. When he questioned her, Walker told him that she had a fight with her boyfriend and struck him with an object that was in the vehicle. She was allowed to leave after the ticket was issued. Defense witness Detective Terrance Miller of the East Feliciana Parish Sheriff's Office was called to the scene where the victim's body was discovered and took photographs. Detective Miller corroborated Detective McKey's testimony that a slip of paper with Walker's first name and phone number was located at the scene within a few inches of the victim's head. Detective Miller also confirmed that Walker gave prior accounts of what occurred that were inconsistent with her trial testimony. For example, he specifically confirmed that Walker initially stated that she and the victim were hit by another car while they were travelling down U.S. Highway 61 and that someone struck her and the victim with an object after they got out of the car. The [petitioner] did not testify.

*State v. Morgan*, 2012-2060 (La. App. 1 Cir. 6/7/13), 119 So. 3d 817, 822–25. The First Circuit found that any rational trier of fact, viewing the evidence in the light most favorable to the state, could have found the evidence proved beyond a reasonable doubt all of the elements of second degree murder.

The habeas court must defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence, resolving all conflicting inferences and credibility choices in favor of the verdict, and may not substitute its judgment for that of the factfinder's. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). Thus, under the standards of *Jackson* and § 2254, this Court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Considering this standard, the Court finds that the First Circuit's decision on sufficiency of the evidence was neither contrary to, nor an unreasonably application of federal law. Accordingly, the petitioner is not entitled to habeas relief on Claim 3.

17

### *Claim (4): Prosecutorial Misconduct*

In Claim 4, the petitioner asserts that her due process rights were violated due to prosecutorial misconduct. Specifically, the petitioner contends the prosecution knowingly presented the false testimony of Jonova Walker and Charles Plain. The petitioner raised this claim in her direct appeal and her application for post-conviction relief. The First Circuit and the trial court (relying on the First Circuit opinion) denied the claim based on Louisiana's contemporaneous objection rule, La.C.Cr.P. art. 841(A).

When a state court decision to deny post-conviction relief rests on a state law ground that is independent of the federal questions raised by the petitioner and is adequate to support the judgment, the federal courts lack jurisdiction to review the merits of the petitioner's federal claims. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Moore v. Roberts,* 83 F.3d 699, (5th Cir.1996). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman,* at 729–730. In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases. *Id.,* at 731–32 (quoting *Rose v. Lundy,* 455 U.S. 509 (1982)); *Moore, supra,* at 703.

For the independent and adequate state ground doctrine to apply, the state courts adjudicating a habeas petitioner's claim must explicitly rely on a state procedural rule to dismiss the petitioner's claims. *Moore, supra,* at 702; *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir.1995).

The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." *Id.* Petitioner can rebut this presumption by establishing that the procedural rule is not "strictly or regularly followed." *Id.* Even if the state procedural rule is strictly and regularly followed, the petitioner can still prevail by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, *Moore, supra,* at 702.

It is well-settled that the contemporaneous objection rule is an independent and adequate state procedural ground. *Duncan v. Cain,* 278 F.3d 537 (5th Cir. 2002). Moreover, the petitioner has failed to show the existence of the necessary cause and prejudice to overcome the procedural bar. To establish "cause," the petitioner must show that some objective factor external to the defense prevented him from timely raising her claim in state court. *See Saahir v. Collins,* 956 F.2d 115, 118 (5th Cir.1992). To establish prejudice, the petitioner must show, "not merely that the [asserted] errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170 (1982) (Emphasis in original). Neither "cause" nor "prejudice" is present in the instant case that would support this Court's disregard of her procedural default. Further, to demonstrate that a failure to consider the claim will result in a "fundamental miscarriage of justice," a habeas petitioner must show, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 645 (5th Cir.1999). To establish such actual innocence, the petitioner must "support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than

not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* The petitioner has failed to make this requisite showing, therefore the Court is precluded from consideration of Claim 4.

### Claim (6): Improper Lay Witness Testimony

In Claim 6, the petitioner asserts that her due process rights were violated when the trial court allowed Detective Dilworth to give improper and unqualified expert testimony regarding cell phone records. The petitioner raised a purely state law claim in her direct appeal. However, the petitioner raised a federal constitutional claim on this issue in her application for post-conviction relief. The First Circuit denied the claim on direct appeal, finding under Louisiana law a lay witness can appropriately infer and tell the jury what cell phone tower accepted a mobile phone signal at specific times based on examination of cell phone records. The trial court, when deciding the petitioner's application for post-conviction relief, relied upon the First Circuit's opinion, which does not expressly address a federal constitutional issue. Under the circumstances, this Court is to conduct plenary review. *Gonzales v. Thaler*, 643 F.3d 425 (5th Cir. 2011) (plenary review is conducted when state habeas court dismisses claim based on the mistaken belief it had already been adjudicated on direct review).

The petitioner's claims concerning the allegedly erroneous admission of evidence may support federal habeas corpus relief only if the state court evidentiary rulings violate due process in such a way as to render the criminal proceedings fundamentally unfair. *Lisenba v. California,* 314 U.S. 219, 236–37 (1941); *Gonzales v. Thaler,* 643 F.3d 425, 430 (5th Cir. 2011); *see also Peters v. Whitley,* 942 F.2d 937, 940 (5th Cir. 1991) (habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally

unfair or violate an explicit constitutional right"). "Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the challenged evidence is a crucial, critical, or highly significant factor in the context of the entire trial." *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir. 1987) (citations omitted); *accord Gonzales,* 643 F.3d at 430; *Wood v. Quarterman,* 503 F.3d 408, 414 (5th Cir. 2007).

As noted by the First Circuit, the admission of Detective Dilworth's testimony on the petitioner's cell phone records did not run afoul of evidentiary rules. Furthermore, the admission of the testimony did not constitute a violation of the petitioner's right to due process. Detective Dilworth's testimony goes to the issue of where the petitioner's cell phone was during the time of the murder and during the time the body was burned and left in the woods. Considering the strength of the evidence against the petitioner, including the testimony of Jonova Walker and the petitioner's mother, the Court cannot conclude that evidence of the location of the petitioner's cell phone, in the context of the trial as a whole, was crucial, critical or highly significant. Claim 6 is without merit.

### Claim 7: Law Enforcement Coerced Witness Statements

In Claim 7, the petitioner contends that law enforcement coerced the trial testimony of Charles Plain and Jonova Walker implicating her in the murder, which violated her due process rights. The petitioner contends that law enforcement induced Walker into changing her initial statement to police that the petitioner was not involved in the murder by falsely representing that the petitioner was placing all the blame on her. The petitioner further contends that law enforcement induced Plain into changing his initial statement to the police that the petitioner was at home with him all night by threatening him with arrest and prosecution. The petitioner raised a

purely state law claim on this issue on direct appeal. The petitioner raised the issue of coerced witness statements as a federal claim in her application for post-conviction relief. The trial court denied the claim, relying upon the First Circuit's opinion, which did not address the federal constitutional issue raised by the petitioner in her application. Under the circumstances, this Court is to conduct plenary review. *Gonzales v. Thaler*, 643 F.3d 425 (5th Cir. 2011) (plenary review is conducted when state habeas court dismisses claim based on the mistaken belief it had already been adjudicated on direct review).

Although the United States Supreme Court has held that a defendant's coerced confession cannot be used at trial, *see Jackson v. Denno*, 378 U.S. 368, 385-86 (1964), "[n]o Supreme Court case addresses the issue of whether coerced witness testimony can be used against a defendant at trial." *Samuel v. Frank*, 525 F.3d 566, 569 (7th Cir. 2008) (United States Supreme Court "has not decided whether the admission of a coerced third-party statement is unconstitutional"). Given the lack of United States Supreme Court precedent on this issue, this Court cannot say that it was constitutional error for the trial court to admit the testimony of Walker and Plain.

In any event, the admission of Walker and Plain's testimony did not render the trial fundamentally unfair. Deceiving a suspect about another suspect's confession does not render a statement involuntary. *Frazier v. Cupp*, 394 U.S. 731 (1969). Accordingly, Jonova Walker's changed statement to the police and subsequent trial testimony cannot be considered coerced because the police allegedly told Walker that the petitioner was implicating Walker as the murderer. During Charles Plain's trial testimony, he denied that the police threatened him with imprisonment and denied that the police told him that he would go to death row.[20] There is

---

[20] Trial Record, p. 828.

22

nothing else in the record to substantiate the petitioner's claim that Plain's testimony was coerced. Walker admitted on cross-examination that the police told her that the petitioner had implicated her in the murder, and she admitted that she was hurt by this information.[21] Accordingly, the defense was afforded ample opportunity to test the reliability of Walker's testimony based on the way she was interrogated by the police. The petitioner's due process rights were not violated because the trial court allowed the testimony of Walker and Plain and Claim 7 is without merit.

### Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the

---

[21] Trial Record, p. 921.

Court finds that reasonable jurists would not debate the denial of petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

### RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be denied, and that this proceeding be dismissed. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on November 4, 2020.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**